Dureee C. J.
 

 In this case a writ of
 
 habeas corpus
 
 issued at the request of Charles F. McKim to his wife, Anne B. McKim, for the production of their infant daughter. The child was produced in obedience to the writ. She was four years old in August last and is in appearance delicate and frail. The physician who has attended her for two years, testifies that she is afflicted with a bronchial affection, and with another trouble which impairs her
 
 health;
 
 that she is better now than formerly, but is still delicate, requiring constant watchfulness and care by some person who is familiar with her character and constitution, and that, in his opinion, she would suffer if taken from her mother, who is devoted in attention to her. Charles F.
 
 *467
 
 McKim, the father, lives in New York, where be pursues the profession of an architect. Anne B. McKim, the mother, lives with her parents in Newport, having left the house of her husband in the spring of 1877. The child has always been with the mother. The object of the proceeding is to have her transferred to the custody of the father.
 

 Charles F. McKim, according to the testimony of men who know him well, is a gentleman of excellent character. He married his wife in October, 1874. Sbe lived with him in New York until May, 1875. She then lived with him in Newport, until January, 1876. Their child was born in Newport, August 13, 1875. In January, 1876, they returned to New York, where they resided in a house which was provided and partly furnished for them by Mrs. McKim’s father, until May, 1877. Since then she has lived apart from him, and, for the most part, in her father’s house at Newport. The petitioner represents that their married life was perfectly happy until after the birth of their child, when one Hose Wagner came to live with them as nurse and friend of Mrs. McKim, and too completely monopolized her. He attributes to her presence and influence the estrangement which has led to their separation. -
 

 Mrs. McKim denies that the estrangement is attributable to Rose Wagner ; and we think the charge that it is attributable to her has not been sustained. Mrs. McKim attributes it to her husband’s character and conduct. She accuses him of hai'shness, untruthfulness, and a low standard of moral sentiment. Her charges, however, except in a single instance, are vague and indefinite, though she intimates that he has been guilty of misconduct, as yet undisclosed, by which he has forfeited her respect, and which renders it impossible for her to live with him again as his wife. No testimony has been submitted to show any misconduct on his part which
 
 legally
 
 justifies her desertion of him.
 

 We think the petitioner is morally fit to have the custody of his child and that he is entirely competent to provide for her education and physical wants. But, on the other hand, the child will doubtless enjoy equally good advantages where she now is, ■ in the house of her maternal grandfather, who is a man of means, and she will have, in addition to them, the affectionate care of a mother, who, whatever her idiosyncrasies, is evidently a lady of
 
 *468
 
 superior moral and mental endowments; whereas with her father she will probably have to be confided to a hired nurse or servant. The welfare of the. child, considering her tender age, her sex, and the delicacy of her constitution, will, in our opinion, be best sub-served by leaving her for the present with her mother ; and indeed we think that, for the present, to take her from her mother is too hazardous an experiment for us to try, unless the law, in deference to the superior right of the father, requires it of us. The question is, then, Does the law require it ?
 

 The law as laid down in England in
 
 Rex
 
 v.
 
 Greenhill,
 
 4 A. & E. 624, decided in 1836, favored the father at the expense of the mother to such an extent that it shocked the moral sentiment of the nation, and led to a modification by act of Parliament. The doctrine of
 
 Rex
 
 v.
 
 Greenhill,
 
 however, was a relapse from the more reasonable doctrine of earlier cases. In
 
 Rex
 
 v.
 
 Delaval, 3
 
 Burr. 1434, decided in 1763, and again in
 
 Blissett's
 
 ease, Lofft, 748, a few years later, Lord Mansfield, while recognizing the preferable right of the father, held that the court had a discretion for the good of the child, to decide each particular case according to its circumstances.
 

 In this country the earlier.English doctrine has generally been adopted. In
 
 The Commonwealth
 
 v.
 
 Briggs,
 
 16 Pick. 203, Chief Justice Shaw said, that “ in the case of a child of tender years, the good of the child is to be regarded as the prominent consideration.” It is true that, in that case, the court decided that the father was entitled to the custody of his child; but the child, though he was only between three and four years old, was a boy, and it does not appear that his health was such as to demand a mother’s anxious care. There are American cases — several of them — in which the mother was allowed to retain the custody, solely because of the sex and tender years, or of the tender years, without regaid to sex, of the child. In
 
 Ex parte Shumpert,
 
 6 Rich. 344, the child was a girl between four and five years old, and the court refused to take her from her mother and deliver her to the father. In
 
 The Commonwealth
 
 v.
 
 Addicks,
 
 5 Binn. 520, there were two female children aged respectively seven and ten, and the court at first refused to transfer them from the mother to the father ; though the transfer was made three years later upon a second application. 2 Serg. & R. 174. In
 
 The
 
 
 *469
 

 State
 
 v.
 
 Paine,
 
 4 Humph. 528, there were three children, a girl aged five, and two boys, aged seven and three. The court transferred the eldest boy to the father, but left the girl and the youngest boy with the mother, solely on the ground that they were of too tender an age to be removed from the protecting care of the mother. In
 
 The State
 
 v. King, 1 Ga. Dec. 93, the child, a girl two and a half years old, was transferred from father to mother, because, at her tender age, she needed a mother’s care. In
 
 The People
 
 v. Mercien,
 
 [1]
 
 there were several efforts by writ of
 
 habeas corpus
 
 to^ obtain for a father from the mother the custody of their infant daughter, all of which were unavailing. Hurd on Habeas Corpus, 511-517. See also
 
 D'Hauteville’s case,
 
 Ibid. 481, and
 
 State
 
 v.
 
 Baird,
 
 21 N. J. Eq. 884. On the authority of these cases we think there can be no doubt that it is the well-being of the child, rather than the right of either parent, which ought to control the court in its decision, and that, even where the father is of good character and the mother not free from fault, it may yet be the duty of the court, out of regard for the tender age, the sex, or the delicate constitution of the child, to leave the child in the wakeful custody of the mother.
 

 The petitioner presses on our consideration the remark of Chief Justice Shaw in
 
 Commonwealth
 
 v.
 
 Briggs,
 
 16 Pick. 203, 205, that “the unauthorized separation of the wife from the husband without any apparent
 
 justifiable
 
 cause, is a strong reason why the child should not be restored to her.” We are sensible of the weight of this remark: and if the child here, instead of being a girl, were a boy of somewhat riper age, in good health, we might deem it our duty under the law to restore him to his father, even at the risk of tearing the mother’s heartstrings asunder. We are led in this case to leave the child with the mother, not for the mother’s sake, but for the good of the child.
 

 The petitioner argues that it will be no detriment to the child to allow him to carry her with him to New York, because the mother will follow. Perhaps she will, but we cannot be sure of it. As we have said, the evidence before us does not show any legal cause of separation. But the evidence does show a strong repugnance on the part of the wife to a renewal of her marital
 
 *470
 
 relations, and does also show, that tbe last year she lived witb her husband, her health mysteriously gave way as if it were sapped by secret troubles. Now in view of this evidence we see no reason to believe that the mother, even if she should follow her child, would consent to live with her husband again as his wife, and we very much doubt the wisdom of coercing her to live with him in any other manner. A home so constituted could hardly be a happy home, even for the child.
 

 Charles
 
 Hart,
 
 James M.
 
 Ripley,
 
 Gceorge
 
 Fuller, for petitioner.
 

 Abraham Payne £ Francis B.
 
 Peckham, Jr., for respondent.
 

 Our decision is that for the present at least, the child be allowed to remain with the mother. We wish to add, however, a single monitory remark. The mother should remember that this decision is not necessarily definitive, and that, while the custody of the child is confided to her, the father’s right has not been forfeited. It will be her duty to respect his right and to allow him every proper opportunity to cultivate the affection of the child. Especially will it be her duty to refrain from any attempt to alienate the child from the father, or to instil into her mind any thought or feeling which a daughter ought not to cherish for her father. A failure to observe this monition may be good ground for another aplication on the part of the petitioner for the custody of his child. But we are confident that the respondent, knowing the wishes of the court, will conform to them.
 

 Let an order be entered recommitting the child to the mother.
 

 Order accordingly.
 

 [1]
 

 I. e.
 
 a. d. 1839, 8 Paige, 47 ; 1840, 25 Wend. 64; 1842, 3 Hill N. Y. 399.